UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

x---

,JACOB ISRAEL BOSSIRA

,Plaintiff

.v

THE STATE OF ISRAEL (A Corporate Entity, SEC CIK #0000052749); THE ISRAELI JUDICIARY; YITZHACK AMIT; ESTHER HAYUT; DAPHNE BARAK-EREZ; NEAL HENDEL; MENACHEM MAZUZ; EDNA ARBEL; CHALED KABUB; YAEL WILNER; ZVI WEIZMANN; NAVA GADISH; EDNA BEN-LEVI; RIVKA MAKAYES; MARINA (MAYA) LEVI; VARDA PLOUT; ESPERANZA ALON; HANANEL SHARABY; SARI JAYYOUSI; IDIT JULIAN; GALIT USI-SHARABY; ELIYA NUSS; CARMIT BEN-ELIEZER; RON GOLDSTEIN; AHARON; MIRALE BEN-NUNFELD; SHAHAR KATOVITZ; ASI ABBAS; THE MINISTRY OF WELFARE AND SOCIAL AFFAIRS; THE NATIONAL INSURANCE INSTITUTE OF ISRAEL (Bituach Leumi); THE ISRAELI POLICE; THE COURTS ADMINISTRATION (Net Ha'Mishpat); THE STATE ATTORNEY'S OFFICE (including MICHAL LEVI); THE LEGAL AID ADMINISTRATION (including STELLA BALFOUR, ESHCHAR ALPERON, AMNON GEVA'ONI, ELAD TUSHIA, GIL DAVIDSON, ADI KLEINMAN, REUT MICHAELI, LIAT ARAEL); SOCIAL WORKERS: SARIT TZARFATI, KEREN BARAK-YANAI, KHANI BAUMGARTTEN, RIVKA KOTZER, RUT SHLOMO, TALI ALGRISSI, EDNA SHEMESH DIDI, TAMI PERETZ, KEREN MOR, RONIT KENNER, RUT ZOHAR, ANAT NISKI; THE STATE COMPTROLLER OF ISRAEL; THE OMBUDSMAN OF THE JUDICIARY (Natalash); THE ATTORNEY GENERAL OF ISRAEL (AVICHAI MANDELBLIT); BANK OF ISRAEL; BANK YAHAV; THE AMERICAN PSYCHIATRIC ASSOCIATION (APA); PHARMACEUTICAL ENTERPRISES (DOES 1-100); WIZO (Women's International Zionist Organization); NA'AMAT; UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT (USAID); U.S. DEPARTMENT OF STATE; ROCKEFELLER PHILANTHROPY ADVISORS; PEF ISRAEL ENDOWMENT FUNDS; JEWISH COMMUNAL FUND (JCF); MIDDLE EAST PEACE

DIALOGUE NETWORK (MEPDN); BLUE WHITE FUTURE (BWF); MOVEMENT FOR QUALITY GOVERNMENT IN ISRAEL (MQG); MUNICIPALITY OF KIRYAT ATA; ,MUNICIPALITY OF KFAR SABA; and DOES 1-350

.Defendants

x---

EMERGENCY PRO SE FILING PACKET

:CONTAINING

Document Page

VERIFIED COMPLAINT FOR RICO VIOLATIONS, FRAUD UPON THE COURT,  1 KIDNAPPING, EXTORTION, AND HUMAN RIGHTS ABUSES 3

PLAINTIFF'S EMERGENCY MOTION FOR LEAVE TO PROCEED IN FORMA  2 PAUPERIS 32

PLAINTIFF'S EMERGENCY MOTION FOR APPOINTMENT OF COUNSEL 38 3

PLAINTIFF'S EMERGENCY MOTION FOR SUBSTITUTE SERVICE OF PROCESS  4 AND PROTECTIVE ORDER 46

PLAINTIFF'S EMERGENCY MOTION FOR PREJUDGMENT ATTACHMENT OF  5 ASSETS 53

PLAINTIFF'S EMERGENCY MOTION FOR ISSUANCE OF FEDERAL ARREST  6 WARRANTS AND REFERRAL FOR CRIMINAL PROSECUTION 60

DECLARATION OF JACOB ISRAEL BOSSIRA IN SUPPORT OF EMERGENCY  7 MOTIONS 68

EXHIBIT LIST (WITH NOTE ON EXHIBITS NOT ATTACHED DUE TO EMERGENCY)  8 72

CERTIFICATE OF SERVICE 75 9

x---

:NOTE REGARDING EXHIBITS

Due to the extreme and life-threatening emergency facing the Plaintiff – including ongoing missile attacks, homelessness, and imminent danger of death – this filing is submitted without the full evidentiary exhibits. The Plaintiff possesses :extensive documentary evidence supporting all allegations, including

Exhibit H: Central District Court of Israel decision dated October 28, 2025, · granting the Plaintiff a full fee waiver and formally recognizing his status as .homeless and indigent (referred to in Motion for IFP)

Exhibit D: Documentation of the Amir Melamed incident, proving that personal · service in Israel is impossible and life-threatening (referred to in Motion for .Substitute Service)

Exhibit L: Printed Return of Service, proving judicial forgery by Defendant Nava · .Gadish

Exhibit AA: Unsigned "draft judgment" of the Israeli Supreme Court (Bagatz · .7130/02), proving systemic forgery

Exhibit U: U.S. House Judiciary Committee Report (July 2025), documenting · ".$900 million in U.S. funding of the "Judicial Coup

Exhibit V: Compilation of public statements by Israeli officials admitting the · "."Fortress of Lies" and "Governmental Coup

Exhibits X, Y, Z: Documentation of the February 2024 Bank Leumi freeze, · .proving Israeli financial subservience to U.S. authority

Exhibit LL: FINRA Interpretive Letter to Development Corporation for Israel · .(August 4, 2000), denying exemptions from disclosure requirements

Exhibits HH: Sixteen years of correspondence with Legal Aid attorneys (2008- · .2024), proving systematic obstruction

Exhibit MM: Documentation of the Ben-Nunfeld Extortion (copy of falsified · "clean" protocol, Plaintiff's contemporaneous notes, complaint filed, and .responses)

The Plaintiff respectfully requests that this Court accept this filing in its current form and appoint counsel, who will promptly file all supporting exhibits and certified translations.

---X

---

[עמוד 3]

VERIFIED COMPLAINT FOR RICO VIOLATIONS, FRAUD UPON THE COURT, KIDNAPPING, EXTORTION, AND HUMAN RIGHTS ABUSES

TABLE OF CONTENTS

Section Title Page

I. NATURE OF THE ACTION 4

II. JURISDICTION AND VENUE 7

III. THE PARTIES 11

IV. THE ENTERPRISE – A TRANSNATIONAL RACKETEERING CONSORTIUM 17

V. STATEMENT OF FACTS 21

A. The Genesis of the Cover-Up: Bagatz 7130/02 (2002) 21

B. The Plaintiff and His Revolutionary Technology (2002-2006) 22

C. The First Divorce and the Genesis of the Pattern (2006-2008) 23

D. The Execution Office Conspiracy – Ongoing Economic Terror (2008-Present) 24

E. The Legal Aid Conspiracy – Sixteen Years of Systematic Obstruction (2008-2024) 27

F. The Kidnapping of the Plaintiff's Children (2013-Present) 30

G. The Pattern of Financial Blockade: Extortionate Court Fees (2006-2025) 34

H. Violation of ICCPR and False Reporting to the United Nations 36

I. The Halakhic Fraud – "The Judge Comes from His Own Home" 38

J. Exhaustion of Remedies – The "Ay Nakat" Cover-Up and the Barak-Erez Sanction 40

K. The "Dictation from Above" Scheme – Evidence of Institutional Control Over Judges 43

L. Material Omission in Financial Disclosures – Fraud Upon Investors 45

M. The Regulatory Framework – Fraud Upon the SEC and FINRA 48

VI. PREDICATE ACTS OF RACKETEERING (18 U.S.C. § 1961) 51

VII. CAUSES OF ACTION (RICO – 18 U.S.C. § 1962) 55

VIII. PRAYER FOR RELIEF 57

---

# I. NATURE OF THE ACTION

1.  This is a civil action brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, by Plaintiff Jacob Israel Bossira, a citizen of Israel, against a transnational criminal enterprise that has hijacked the sovereign machinery of the State of Israel. This is an action brought against a transnational criminal enterprise – a "Fortress of Lies" that has, for over two decades, used the machinery of the State to steal, extort, kidnap, and cover up. The Plaintiff, a homeless man living on the streets under missile fire, seeks justice in the only forum left to him: this Court.

2.  For over two decades – not in isolated incidents, but in a continuous, unrelenting campaign – the Defendants have operated as an associated-in-fact enterprise (the "Enterprise") with the common purpose of systematically sabotaging the Plaintiff's claims, stealing his revolutionary intellectual property (the Nexus-12 AI system), extorting his financial assets, kidnapping his children, and silencing him through a fraudulent psychiatric "bounty system".

3.  This is a story of a "Fortress of Lies" – a term used by Israel's own Minister of Justice, Yariv Levin, to describe a judiciary that has unlawfully usurped sovereign power and operates as a "Governmental Coup" (Exhibit V). It is a story of a "total

jungle," as described by leading Israeli lawyers, where "judges' worldviews prevail over any law or precedent" (Exhibit G). It is a story of systemic forgery, where the Supreme Court issues unsigned "draft judgments" marked "Subject to Editorial Changes" to cover up state crimes.

4. The Enterprise is not confined to Israel. It operates through a sophisticated network of U.S.-based entities and federal agencies that provided the financial infrastructure for the Judicial Coup. As documented by the U.S. House Judiciary Committee Report (July 2025), the Biden-Harris administration, through USAID and the State Department, funneled approximately $900 million to organizations that "contributed directly and indirectly to the judicial reform protests that sought to undermine the Israeli government" (Exhibit U).

5. This Court has jurisdiction over the primary Defendant, the State of Israel, not as a foreign sovereign, but as a corporate entity registered in the United States (SEC CIK #0000052749). This corporation engages in extensive commercial activity within the Southern District of New York by issuing, marketing, and selling "Israel Bonds" to American investors. The proceeds from these bonds are used to finance the very government apparatus that perpetrates the racketeering activities described herein.

6. The Plaintiff has exhausted all possible domestic remedies in Israel. Every appeal, every petition to the Supreme Court, every complaint to the Ombudsman, every plea to the Minister of Justice has been dismissed, ignored, or laundered. An independent legal review commissioned by the Plaintiff and conducted by prominent Israeli attorney Eshel Segal (2020) concluded that the Israeli system is fundamentally incapable of providing a remedy, describing a "corrupt culture, deep-rooted and systemic" that leaves the citizen with "no chance of obtaining justice" (Exhibit K).

7. As a direct result of the Enterprise's ongoing activities, the Plaintiff is now homeless, has no access to any bank accounts, has suffered severe physical and mental deterioration (losing 11 kilograms in three weeks), and remains unlawfully separated from his children. He faces an imminent threat to his life, including from Iranian missile attacks, as he has no shelter or protected space. The harm is ongoing and continuous, occurring each day.

---

II. JURISDICTION AND VENUE

1. Subject Matter Jurisdiction. This Court has jurisdiction under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c), which provides a private right of action for any person injured in their business or property by reason of a violation of 18 U.S.C. § 1962.

2. The Defendant State of Israel is sued as a corporate entity registered in the United States (SEC CIK #0000052749). As such, it is not a foreign sovereign for the purposes of this action and is subject to the general jurisdiction of this Court as any other corporation doing business in New York.

3. In the alternative, even if treated as a foreign sovereign, jurisdiction is proper under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(a)(2), the "commercial activity" exception. The Defendant State, through its corporate alter ego, engages in extensive commercial activity in the United States by issuing, marketing, and selling "Israel Bonds" to American investors. The fraudulent conduct alleged herein – including the securities fraud, wire fraud, and money laundering – is based upon and directly connected to this commercial activity.

4. Personal Jurisdiction. This Court has personal jurisdiction over the U.S.-based Defendants, including USAID, the State Department, Rockefeller Philanthropy Advisors, PEF, JCF, MEPDN, the APA, and the Pharmaceutical Enterprises. These are U.S. entities or federal agencies with their principal places of business in the United States. Their conduct – funding a foreign insurgency, providing fraudulent diagnostic tools, and laundering money through New York financial institutions – constitutes actionable tortious conduct with direct and foreseeable effects in the United States. The official report of the U.S. House Judiciary Committee serves as prima facie evidence of their involvement (Exhibit U).

5. Venue. Venue is proper in the Southern District of New York pursuant to 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred here, including the issuance and sale of Israel Bonds, the dissemination of the DSM, and the laundering of funds through New York-based financial institutions and intermediary organizations.

6. JURISDICTIONAL NEXUS AND FORUM NON CONVENENS OBVIATION

a. Direct Nexus to New York (The New York Anchor). Defendants the American Psychiatric Association (APA) and the Pharmaceutical Companies (Does 1-100) are entities registered in or conducting intensive business operations within the Southern District of New York. The primary instrumentality used to perpetrate the theft of the Plaintiff's Nexus-12 technology and the kidnapping of his children is the DSM (Diagnostic and Statistical Manual of Mental Disorders), an American intellectual property product of the APA. The Enterprise's misuse of this American standard to commit international crimes establishes a direct and

substantial nexus to this District. Furthermore, the financing of the Enterprise is conducted through the issuance of Israel Bonds on the New York Stock Exchange, within this District, thereby subjecting the Defendants to the jurisdiction of the SDNY.

b. No Adequate Alternative Forum and Exhaustion of Remedies. The Plaintiff has exhausted every conceivable remedy within the State of Israel. He has petitioned every possible authority, including: the Family Courts, the District Courts, the Supreme Court of Israel (whose justices – including Defendants Yitzhak Amit, Esther Hayut, Daphne Barak-Erez, and others – are themselves defendants in this action), government ministers, the State Comptroller, and the police. He has knocked on every door – from Family Court to the Supreme Court, from Legal Aid to the State Comptroller. Every door was slammed shut. Every petition was ignored, dismissed, or laundered. The very judges he petitioned are now defendants in this action. There is no forum left in Israel that is not itself part of the Enterprise.

c. "They All Covered It Up." Every single one of these petitions was actively or ignored by the Defendants and the Israeli authorities. The ("טויח") covered up Defendants systematically refused to address the Plaintiff's complaints regarding forged court protocols, the kidnapping of his children, and the theft of his revolutionary technology. The entire apparatus of governance in Israel functions as a "Fortress of Lies," wherein the Defendants mutually shield each other from accountability (Mutual Shielding). This makes any attempt to obtain a remedy in Israel futile and hopeless.

d. Conclusion. For all the foregoing reasons, the Southern District of New York is the only forum on earth capable of adjudicating this case without bias and under the federal RICO statute. Any argument by the Defendants that the Plaintiff should be required to pursue his claims in Israel must be rejected, as the Israeli forum is fundamentally inadequate and controlled by the Defendants themselves.

7. Inadequate Forum in Israel. For all the reasons stated above, the Plaintiff has no adequate alternative forum in Israel. The Israeli judiciary is itself a defendant and operates as a "Fortress of Lies" (Exhibit V). Independent legal experts have confirmed that the Israeli system is fundamentally incapable of providing a remedy (Exhibit K). Therefore, dismissal on grounds of forum non conveniens would be inappropriate.

8. Conclusion on Jurisdiction. For all the foregoing reasons – the Defendants' commercial activity in New York, their registration with the SEC, the funneling of American investor funds to finance the Enterprise, the physical destruction of

evidence, the documented pattern of extortion and cover-up, and the complete absence of any adequate forum in Israel – this Court has both subject matter and personal jurisdiction. Any argument that the Plaintiff should be required to pursue his claims in Israel must be rejected, as the Israeli forum is not merely inadequate but is itself controlled by the Defendants and actively participates in the racketeering.

---

III. THE PARTIES

A full list of named Defendants is provided in the caption. Key Defendants are described below.

1. Plaintiff Jacob Israel Bossira is a citizen and resident of the State of Israel. He is the father of two children, E and H, who were kidnapped by the Defendants in 2013 and remain unlawfully separated from him. He is the sole inventor of the Nexus-12 AI system, a revolutionary technology with applications in clean energy and non-pharmaceutical medical treatment. He is currently homeless, destitute, and without access to any bank accounts as a direct result of the Defendants' racketeering. He appears pro se due to the Enterprise's systematic obstruction of his access to legal representation.

2. The Corporate Defendant, "The State of Israel," is sued as a New York-registered corporate entity (SEC CIK #0000052749) that issues and sells "Israel Bonds" to U.S. investors. This corporation engaged in a scheme to defraud those investors by misrepresenting the stability and integrity of the Israeli legal system, while its organs were actively engaged in the racketeering activities described herein.

3. The Israeli Judiciary Defendants (Justices Amit, Hayut, Barak-Erez, Hendel, Mazuz, Arbel, Kabub, Wilner; Judges Weizmann, Gadish, Ben-Levi, Makayes, Levi; and Registrars Usi-Sharaby, Nuss, Ben-Eliezer, Goldstein, Aharon, Ben-Nunfeld, Katovitz, Abbas) are the leaders and enforcers of the "Judicial Coup." They operate as a self-appointing cartel, issuing unsigned, forged judgments to cover up state crimes and systematically denying the Plaintiff access to justice. As their actions constitute a usurpation of sovereign power and are performed in

the "clear absence of all jurisdiction," they are not entitled to judicial immunity. They are private imposters acting under the color of a forged title.

4. The "Kidnapping" Defendants (Judge Edna Ben-Levi, Judge Nava Gadish, and the Social Workers named in the caption) are directly responsible for the physical removal of the Plaintiff's children from his custody without lawful authority, through forged proceedings and fraudulent diagnoses.

5. The Legal Aid Conspirators (including Stella Balfour, Eshchar Alperon, Amnon Geva'oni, Elad Tushia, Gil Davidson, Adi Kleinman, Reut Michaeli, Liat Arael) systematically sabotaged the Plaintiff's claims for sixteen years (2008-2024), refusing representation, missing deadlines, and laundering the crimes of the other wings. Their continuous, coordinated obstruction tolls any statute of limitations.

6. The Execution Office Registrars (Aharon, Mirale Ben-Nunfeld, Shahar Katovitz, Asi Abbas) engaged in a seven-year campaign of economic terror, seizing the Plaintiff's accounts, threatening him with imprisonment, and deleting court protocols to conceal their crimes. These acts continue to this day, as the Plaintiff remains without access to his funds.

7. The Pharmaceutical/DSM Defendants (APA and Does 1-100) are responsible for developing, publishing, and disseminating the DSM, a fraudulent diagnostic instrument used by the Enterprise to manufacture "unfitness" labels and justify the kidnapping and forced drugging of children for profit.

8. The U.S. Funding Defendants (USAID, State Department, Rockefeller Philanthropy Advisors, PEF, JCF, MEPDN, BWF, MQG) knowingly provided material support to the Enterprise. By funneling hundreds of millions of dollars to organizations that orchestrated protests aimed at shielding the rogue judiciary from democratic reform, they became active co-conspirators in the racketeering scheme.

9. The Municipalities (Kiryat Ata and Kfar Saba) employed and supervised the social workers, were fraudulently added as parties to the kidnapping proceedings to provide illegal legal representation, and received complaints without acting.

---

IV. THE ENTERPRISE – A TRANSNATIONAL RACKETEERING CONSORTIUM

1.  The Defendants constitute an "enterprise" as defined by 18 U.S.C. § 1961(4), an associated-in-fact entity whose members function as a continuing unit for a common purpose of engaging in a pattern of racketeering activity.

2.  The Enterprise has six interrelated wings:

a. The Judicial Wing: A self-appointing, rogue judiciary that issues forged orders and launders crimes. This wing operates under a system of "dictation from above" (תכתיבים מגבוה), whereby judges receive instructions on how to rule, and judgments are pre-written to serve the Enterprise's interests.

b. The Economic Wing: Execution Office registrars who have engaged in ongoing extortion, theft, and obstruction since 2008.

c. The Kidnapping Wing: The Ministry of Welfare and its social workers, who have held the Plaintiff's children as hostages since 2013.

d. The Legal Aid Wing: Attorneys who systematically sabotaged the Plaintiff's claims for sixteen years (2008-2024).

e. The Scientific Wing: The APA and Pharmaceutical Companies, who provided the fraudulent DSM framework and profit from the forced medication of children.

f. The U.S. Funding Wing: U.S. agencies and NGOs that funded the protection of the rogue judiciary.

3.  Admissions by Sovereign Officials. The Enterprise's nature has been confirmed by senior officials:

a. Prime Minister Benjamin Netanyahu: "The previous U.S. administration transferred nearly a billion dollars to left-wing NGOs in Israel, with the aim of undermining the rule of a democratically elected government" (Exhibit V).

b. Minister of Justice Yariv Levin: Described the judiciary as a "Mafia" and a "Fortress of Lies" engaged in a "Governmental Coup" (Exhibit V).

c. Justice Yitzhak Amit: "We are the ones who decide in Israel", comparing himself to a soccer referee with absolute authority (Exhibit V).

4.  The Self-Appointing Cartel – "The Referee Who Makes the Rules." Justice Amit's statement is a fundamental distortion of democratic governance. In a democracy, a referee enforces rules established by the sovereign – the people and their elected representatives. A referee who creates the rules, appoints himself to the position, and declares himself the final authority is not a referee; he is a dictator. Israeli legislators have correctly labeled this a "judicial coup" and the establishment of a "judicial oligarchy".

---

V. STATEMENT OF FACTS

A. The Genesis of the Cover-Up: Bagatz 7130/02 (2002)

1. The Plaintiff's ordeal began in 2002, when he filed a petition with the Supreme Court of Israel (Bagatz 7130/02) to present his clean-energy technology and challenge state-sanctioned air pollution. The Plaintiff possesses an unsigned copy of the Court's "judgment," marked "Subject to Editorial Changes," bearing an official stamp certifying it as a true copy – a forgery that proves systemic corruption at the highest level.

2. This 2002 document proves that the pattern of forgery was, from the beginning, a policy sanctioned by the highest judicial authority.

B. The Plaintiff and His Revolutionary Technology (2002-2006)

1. The Plaintiff developed groundbreaking technologies in clean energy and solar-based computing (Sabilix, and later, Nexus-12). These technologies had the potential to disrupt the global energy and pharmaceutical industries. The United States was a primary target market, and the Plaintiff engaged in discussions with American investors and partners.

C. The First Divorce and the Genesis of the Pattern (2006-2008)

1. In 2006, with the assistance of Defendant NA'AMAT, the Plaintiff's former spouse filed a false police complaint. The case was closed for lack of evidence, and the Plaintiff was ultimately acquitted. The presiding judge refused to award costs, directing the Plaintiff to a separate civil claim – shielding the system.

2. Defendant Registrar Galit Usi-Sharaby issued an unlawful "No Exit Order," preventing the Plaintiff from meeting with investors and causing the collapse of his businesses.

D. The Execution Office Conspiracy – Ongoing Economic Terror (2008-Present)

1. [סעיף קודם]

2. The Extortion by Registrar Mirale Ben-Nunfeld – A Smoking Gun of Judicial Criminality

a. The Threat. In one of the most chilling and well-documented acts of judicial extortion, Registrar Mirale Ben-Nunfeld did not merely err in judgment – she committed a calculated, deliberate felony in open court, in full view of the Plaintiff's own Legal Aid attorney, who sat silent and complicit. On [Date], during a hearing before Registrar Ben-Nunfeld, the Plaintiff attempted to explain that the underlying judgment had been voided, and that the National Insurance Institute's new execution file was illegal. She did not listen. She did not consider the law. She looked at the Plaintiff and, with the full authority of the State behind her, delivered an ultimatum: "Pay, or you'll go to prison!" These were not words of advice. They were not a neutral statement of potential consequences. They were a direct threat of imprisonment – the classic weapon of an extortionist, now wielded by a judicial officer. "Pay, or you'll go to prison." Those words, spoken by a judicial officer in a court of law, are not a legal ruling. They are the words of a racketeer in a robe.

b. The Victim's Response. The Plaintiff, homeless, without resources, and facing the immediate prospect of being thrown into a cell, had no choice. He agreed to pay 45,000 NIS – money he did not owe, for a debt that did not exist – simply to avoid being locked away by the same State that was supposed to protect his rights. This is not "enforcement." This is extortion under color of official right (18 U.S.C. § 1951).

c. The Attorney's Silence – Aiding and Abetting. Seated beside the Plaintiff during this hearing was his Legal Aid attorney, paid for by the State. He witnessed the threat. He heard the registrar's words. He saw his client being coerced into paying an unlawful sum. And he did nothing. He did not object. He did not file a complaint. He did not even note the threat in the record. He sat silent, a passive accomplice to the crime, laundering the extortion through his inaction. And when the State-paid attorney beside him sat silent, he did not just fail his client – he became an accomplice to the crime. His silence was not negligence; it was conscious ratification of the registrar's criminal conduct.

d. The Cover-Up – Deletion of the Protocol. When the Plaintiff, still reeling from the threat, announced that he intended to file a complaint against the registrar, Registrar Ben-Nunfeld took one final, damning step. She waited until the hearing concluded, then personally deleted the entire court protocol from the "Net

Ha'Mishpat" system. She then provided the Plaintiff with a "clean" version of the protocol – a version that made no mention of her threat. This was not a "technical malfunction." This was a deliberate, premeditated act of evidence tampering, committed by a judicial officer to conceal her own felony. The system note that later appeared – "deleted due to technical malfunction" – was a transparent lie, a digital fingerprint of the cover-up.

e. The Aftermath – Three More Years of Economic Warfare. The extortion did not end with the 45,000 NIS payment. Registrar Ben-Nunfeld continued to oversee the Plaintiff's execution file for another three years. During this time, she allowed the "debt" to balloon with interest and fees, she authorized continued seizures of any funds that appeared in the Plaintiff's accounts, and she ensured that the Plaintiff remained economically crippled – all to protect the original extortion and to prevent the truth from emerging.

f. The Ongoing Harm. The Plaintiff's funds were never returned. The "debt" – a fiction created by a voided judgment and enforced through threats – remains a stain on his record, blocking his access to credit, to housing, to any normal economic life. The harm is not in the past; it is ongoing. Every day that the Plaintiff remains homeless, every day he is denied a bank account, is a new day of injury caused directly by Registrar Ben-Nunfeld's criminal acts.

g. Why This Is a "Smoking Gun." This incident proves, beyond any doubt, that the Enterprise operates through:

* Extortion – using the threat of imprisonment to extract money.

* Obstruction of Justice – deleting evidence to cover up crimes.

* Official Complicity – the State-funded attorney sat silent, enabling the crime.

* Mutual Shielding – the court system protected its own, allowing the registrar to continue overseeing the file for years after her crime.

* Ongoing Harm – the economic destruction continues to this day, defeating any statute of limitations defense.

h. The Connection to U.S. Investor Funds. The registrar who committed these crimes, and the Legal Aid attorney who sat silent, were both paid from the same Israeli state budget that is funded, in substantial part, by proceeds from Israel Bonds sold to American investors. The same State budget that paid Registrar Ben-Nunfeld's salary, and that funded the silent attorney who watched her commit extortion, was filled with money from American investors who bought Israel Bonds. Those investors were never told that their money would be used to finance threats, extortion, and evidence tampering. They were never told that the

very system their dollars supported was actively blocking a claim that could expose a trillion-dollar liability. This is not just a failure to disclose – it is a fraud of historic proportions, paid for by the victims themselves. The investors who bought those bonds were never told that their money was being used to finance extortion and evidence tampering. This constitutes money laundering (18 U.S.C. § 1956) – the use of proceeds from lawful commerce (bond sales) to promote and conceal unlawful activity (the racketeering enterprise).

3.  Registrars Shahar Katovitz and Asi Abbas continued the economic blockade, refusing to consider the Plaintiff's arguments. The seizures and blocks on the Plaintiff's bank accounts continue to this day.

4.  Because the harm is ongoing and continuous, each day constitutes a new injury. The statute of limitations does not run on a continuing wrong. Moreover, the deletion of the protocol constitutes fraudulent concealment, tolling any limitations period.

E. The Legal Aid Conspiracy – Sixteen Years of Systematic Obstruction (2008-2024)

[הסעיפים המקוריים נשארים כפי שהיו]

F. The Kidnapping of the Plaintiff's Children (2013-Present)

[הסעיפים המקוריים נשארים כפי שהיו]

G. The Pattern of Financial Blockade: Extortionate Court Fees (2006-2025)

[הסעיפים המקוריים נשארים כפי שהיו]

H. Violation of ICCPR and False Reporting to the United Nations

[הסעיפים המקוריים נשארים כפי שהיו]

"I. The Halakhic Fraud – "The Judge Comes from His Own Home

[הסעיפים המקוריים נשארים כפי שהיו]

J. Exhaustion of Remedies – The "Ay Nakat" Cover-Up and the Barak-Erez Sanction

[הסעיפים המקוריים נשארים כפי שהיו]

K. The "Dictation from Above" Scheme – Evidence of Institutional Control Over Judges

[הסעיפים המקוריים נשארים כפי שהיו]

L. Material Omission in Financial Disclosures – Fraud Upon Investors

[הסעיפים המקוריים נשארים כפי שהיו]

M. The Regulatory Framework – Fraud Upon the SEC and FINRA

[הסעיפים המקוריים נשארים כפי שהיו]

---

VI. PREDICATE ACTS OF RACKETEERING (18 U.S.C. § 1961)

1. The following acts, committed by the Defendants as part of the Enterprise's pattern of racketeering activity, constitute "predicate acts" under RICO:

ACT I: Tampering with Public Records and Wire Fraud (The Gadish Theft)

Defendant Nava Gadish knowingly and intentionally deleted a valid, court- ·
.issued Return of Service from the "Net Ha'Mishpat" digital system

This constitutes tampering with public records (18 U.S.C. § 1519) and wire ·
.fraud (18 U.S.C. § 1343)


ACT II: Kidnapping and Hostage-Taking (The Ben-Levi Abduction)

Defendant Edna Ben-Levi, acting in a clear absence of all jurisdiction, ordered ·
the removal of the Plaintiff's minor children without a lawful order, without a
.hearing, and without evidence

This constitutes kidnapping (18 U.S.C. § 1201) and hostage-taking (18 U.S.C. § ·
.1203). The children remain held


ACT III: Extortion (18 U.S.C. § 1951)

Registrar Mirale Ben-Nunfeld threatened the Plaintiff with imprisonment unless ·
.he paid 45,000 NIS he did not owe

The Enterprise, collectively, used the kidnapping of his children and the ·
.destruction of his businesses as leverage to extort his intellectual property


ACT IV: Obstruction of Justice (18 U.S.C. § 1503)

:The Defendants systematically obstructed the Plaintiff's access to justice by ·

;Blocking his access to the "Net Ha'Mishpat" digital court system ·

;Deleting court protocols and evidence ·

Using police forces to arrest a process server and destroy evidence. Amir ·
;Melamed remains in custody

.Imposing extortionate court fees of 7.5 Million NIS ·


ACT V: Mail and Wire Fraud (The DSM Conspiracy)

The APA and Pharmaceutical Companies used U.S. mail and wires to ·
disseminate the DSM as a valid diagnostic tool, while concealing its inherent
.biases and its funding by the pharmaceutical industry

The Israeli Defendants used these communications to justify the forcible ·
.removal and drugging of the Plaintiff's children

ACT VI: Money Laundering (18 U.S.C. § 1956)

The Corporate Defendant raised funds from American investors through the ·
sale of Israel Bonds.

These funds were used to pay the salaries of the judges, social workers, and ·
officials who perpetrated the racketeering.

ACT VII: Securities Fraud (18 U.S.C. § 1348)

The Corporate Defendant issued and sold securities (Israel Bonds) to the ·
American public based on material misrepresentations regarding the integrity of
the Israeli legal system and its financial condition.

ACT VIII: Theft of Public Money (18 U.S.C. § 641)

The Execution Office registrars authorized the seizure of the Plaintiff's funds ·
without legal authority. These funds have never been returned. The theft is
ongoing.

---

VII. CAUSES OF ACTION

COUNT I: Violation of 18 U.S.C. § 1962(c) – Conducting Enterprise Affairs Through
a Pattern of Racketeering Activity

1. The Plaintiff incorporates by reference all preceding paragraphs.

2. The Defendants constituted an "enterprise" as defined by 18 U.S.C. § 1961(4).

3. The Defendants conducted and participated in the conduct of the affairs of
the Enterprise through a pattern of racketeering activity, as defined by 18 U.S.C. §
1961(5), consisting of the multiple, related predicate acts described in Part VI,
committed continuously over a period of more than two decades.

4. The pattern of racketeering activity directly and proximately caused injury to
the Plaintiff's business and property, including the loss of his intellectual

property, the destruction of his businesses, and the costs incurred in fighting the
Enterprise's unlawful actions.

COUNT II: Violation of 18 U.S.C. § 1962(d) – Conspiracy to Violate RICO

1. The Plaintiff incorporates by reference all preceding paragraphs.

2. The Defendants conspired to violate 18 U.S.C. § 1962(c), agreeing to
participate in the conduct of the Enterprise's affairs through a pattern of
racketeering activity.

3. In furtherance of the conspiracy, the Defendants committed numerous overt
acts, as detailed throughout this Complaint.

---

VIII. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court enter judgment in
his favor and against the Defendants, jointly and severally, as follows:

A. Appointment of Counsel

Pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel to represent the Plaintiff in
this action, given its extreme complexity, the Plaintiff's indigence, the proven
danger to anyone attempting to litigate against the Enterprise, and the imminent
risk that evidence will be destroyed without immediate intervention.

B. Preservation Order (Spoliation Order)

Order the Defendants to preserve all documents, communications, and digital
records related to the Plaintiff's cases and to the judicial decision-making
process in his matters, and prohibit the destruction of any evidence pending
further order of this Court.

C. Appointment of a Forensic Accountant

Appoint a qualified forensic accountant to assist in the valuation of the stolen Nexus-12 technology and the calculation of damages from two decades of economic destruction.

### D. Treble Damages

Pursuant to 18 U.S.C. § 1964(c), award treble damages for all injuries to the Plaintiff's business and property, in an amount to be determined at trial.

### E. Punitive Damages

Award punitive damages for the extreme and outrageous conduct, including kidnapping, extortion, and systematic obstruction of justice.

### F. A Permanent Injunction

1. Order the Defendants to cease all unlawful activities, including restoring the Plaintiff's access to the "Net Ha'Mishpat" system and unblocking his bank accounts.

2. Order the immediate return of the Plaintiff's minor children to his lawful custody.

3. Order the APA to cease marketing the DSM as a valid diagnostic tool without full disclosure of its ties to the pharmaceutical industry.

4. Enjoin the U.S. funding Defendants from providing further material support to organizations involved in political interference in Israel.

### G. Prejudgment Attachment

Pursuant to Federal Rule of Civil Procedure 64 and 18 U.S.C. § 1963(d), order prejudgment attachment of the Defendants' assets within this District, specifically funds related to the issuance and sale of Israel Bonds.

### H. Declaratory Judgment

Declare that all prior rulings against the Plaintiff issued by the Defendant Judiciary are void ab initio due to fraud upon the court and the clear absence of all jurisdiction.

I. Referral for Criminal Prosecution

Refer the evidence in this matter to the United States Attorney's Office for the Southern District of New York for investigation and potential criminal prosecution of the Defendants.

J. Such other and further relief

Grant such other and further relief as the Court deems just and proper.

---

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

---

[עמוד 32]

PLAINTIFF'S EMERGENCY MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

Plaintiff Jacob Israel Bossira, appearing pro se and in a state of extreme and life-threatening emergency, respectfully moves this Court for an order granting him leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915, and in support thereof states as follows:

MEMORANDUM OF LAW

I. THE PLAINTIFF IS DESTITUTE

1.  The Plaintiff is currently homeless, living on the streets of Israel. He has no shelter, no income, and no access to any bank accounts. His bank accounts were frozen and ultimately closed as a direct result of the Defendants' two-decade-long racketeering campaign.

2.  As documented in Exhibit H, on October 28, 2025, the Central District Court of Israel (Case No. At"m 15282-10-25) issued a formal decision granting the Plaintiff a full waiver of court fees. In that decision, the Court explicitly acknowledged the Plaintiff's dire financial situation and his lack of a bank account, noting that requiring payment would create a "vicious circle" that would block his access to justice. A copy of this decision, which formally recognizes the Plaintiff's status as homeless and indigent, is referenced as Exhibit H and will be provided upon appointment of counsel.

3.  Despite this judicial finding – and in direct contradiction to it – the State Attorney's Office of Israel has continued to demand that the Plaintiff provide bank statements as a prerequisite for processing his claims. This demand is made despite the fact that the Plaintiff has no bank account. His accounts were frozen and ultimately closed as a direct result of the Defendants' unlawful seizures.

4.  This is a classic "Catch-22" – a demand for documents that do not exist, made by an entity that knows they do not exist. The only purpose of this demand is to create an endless procedural loop, allowing the Defendants to indefinitely delay, obstruct, and ultimately deny any substantive hearing of the Plaintiff's claims.

II. THE PLAINTIFF'S CLAIMS ARE SUBSTANTIAL AND NON-FRIVOLOUS

1.  As demonstrated by the accompanying Complaint, this case raises substantial and complex issues of international law, RICO violations, securities fraud, and human rights abuses. The claims are supported by extensive documentary evidence, including official U.S. government findings, physical proof of judicial forgery, and admissions by Israeli officials.

2.  These are not frivolous claims. They are supported by overwhelming evidence that will be presented to this Court upon appointment of counsel.

III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant him
leave to proceed in forma pauperis.

Dated: March 2, 2026

New York, New York

Respectfully submitted,

---

Jacob Israel Bossira

Plaintiff, Pro Se

(Homeless – No Fixed Address)

Telephone: +972 53-373-8331

Email: bossira888@gmail.com

---

[עמוד 38]

PLAINTIFF'S EMERGENCY MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff Jacob Israel Bossira, appearing pro se and in a state of extreme and life-
threatening emergency, respectfully moves this Court for an order appointing
counsel to represent him in this action pursuant to 28 U.S.C. § 1915(e)(1), and in
support thereof states as follows:

MEMORANDUM OF LAW

## I. THE PLAINTIFF IS IN IMMINENT DANGER OF DEATH

1. The Plaintiff is currently homeless, living on the streets of Israel. He has no shelter, no income, and no access to any bank accounts. He is entirely exposed to the elements.

2. The State of Israel is currently under sustained missile attacks from Iran, Lebanon, Yemen, and Gaza. The Plaintiff has no access to any protected space, bomb shelter, or safe room. He is entirely exposed to these attacks. Each day, every air raid siren places his life in immediate and direct danger.

3. In addition to the threat of missile attacks, the Plaintiff is exposed to severe weather conditions, including storms and flooding, with no shelter or means of protection. He has no food, no warm clothing, and no way to obtain basic necessities.

4. The Defendants have systematically blocked the Plaintiff from receiving any form of social welfare or subsistence allowance, despite the fact that he has paid mandatory insurance premiums to the National Insurance Institute (Bituach Leumi) – a Defendant in this action.

## II. THE PLAINTIFF HAS SUBSTANTIAL AND COMPLEX CLAIMS

1. The accompanying Complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968, against dozens of Defendants, including a foreign state (sued as a corporate entity), its entire judiciary, multiple government ministries, U.S.-based organizations, and pharmaceutical companies.

2. The claims are supported by overwhelming prima facie evidence, as referenced throughout the Complaint, including official U.S. government findings, physical proof of judicial forgery, and admissions by Israeli officials.

3. This case involves complex issues of international law, RICO pleading, sovereign immunity, judicial immunity, securities fraud, human trafficking, and forensic accounting. The Plaintiff, a homeless man fighting for survival, cannot adequately litigate these claims without professional legal representation.

## III. THE IMBALANCE OF POWER IS OVERWHELMING

1.  The Defendants include a sovereign state, its entire judiciary, multiple government ministries, the American Psychiatric Association, major pharmaceutical companies, and a network of well-funded U.S.-based organizations. They are represented by scores of government lawyers and private counsel with unlimited resources.

2.  The Plaintiff appears alone, homeless, without access to legal research, without means to retain experts, and without any ability to conduct discovery. The imbalance of power is so extreme that a fair proceeding is impossible without the appointment of counsel.

## IV. URGENT NEED FOR COUNSEL TO PRESERVE EVIDENCE AND PREVENT SPOLIATION

1.  The Plaintiff has uncovered evidence suggesting that judicial decisions in his case were not the product of independent judicial discretion, but rather were dictated from above ("תכתיבים מגבוה") as part of a systematic pattern of institutional control over the judiciary. This evidence indicates that judges were instructed how to rule, that decisions were pre-written, and that the appearance of judicial independence was maintained only as a facade to shield the Enterprise from accountability.

2.  However, the Plaintiff is currently pro se, homeless, and without resources. He cannot protect this evidence. He cannot secure it, catalog it, or present it to the Court in a manner that would withstand the Defendants' inevitable attempts to challenge its authenticity. Moreover, he has documented that the Defendants have a proven pattern of destroying evidence when it threatens to expose their crimes:

· Deletion of court protocols (Registrar Ben-Nunfeld);

· Forgery of judicial records (Judge Gadish);

· Suppression of exculpatory evidence (Social workers);

· Obstruction of justice through violence – the arrest and continued detention of Amir Melamed.

3.  The Plaintiff has every reason to believe that, upon learning of this lawsuit, the Defendants will intensify their efforts to destroy the evidence of the "dictation from above" scheme. Witnesses may be intimidated, documents may be shredded, digital records may be erased. The "Net Ha'Mishpat" system, which the Defendants control, has already been used to delete evidence. There is no reason to believe they will not do so again.

4.  The Plaintiff has now documented, with chilling precision, that the Defendants delete evidence when it threatens to expose them. Registrar Ben-Nunfeld deleted the protocol of her own extortion. The Plaintiff has evidence of even higher-level 'dictation' – instructions from above on how judges must rule. If this evidence is not secured immediately, the Defendants will destroy it, just as they destroyed the protocol. The appointment of counsel is not a matter of convenience; it is a matter of evidentiary survival.

5.  The Sde Teiman Precedent – A Warning. The recent scandal involving the former Military Advocate General, Maj. Gen. Yifat Tomer-Yerushalmi, and the leak of the Sde Teiman video, provides chilling proof of what happens when gatekeepers decide to conceal the truth. For months, the Military Advocate General submitted false affidavits to the Supreme Court, claiming that an exhaustive probe had failed to identify the source of the leak. Justice Daphne Barak-Erez, in a moment of misplaced trust, declared: "gatekeepers never lie." It was later revealed that the Military Advocate General herself had orchestrated the leak, and that she had knowingly deceived the Court. The investigation was a sham, and the cover-up was exposed only by chance – a routine polygraph test for a promotion.

6.  The Plaintiff's case presents a parallel danger. The very same institutional forces that sought to conceal the truth in the Sde Teiman affair are now aligned against him. The same gatekeepers – including, potentially, the same justices who placed their faith in false affidavits – are now the defendants. The only way to ensure that the evidence of "dictation from above" is preserved, and that the truth emerges, is through the immediate appointment of counsel with the authority to seek protective orders, to conduct discovery, and to secure evidence before it is destroyed.

7.  The Plaintiff specifically requests that appointed counsel be empowered to:

a.  Immediately seek a preservation order (spoliation order) from this Court, directing the Defendants to preserve all documents, communications, and digital records related to the Plaintiff's cases and to the judicial decision-making process in his matters;

b. Conduct emergency discovery to identify and secure evidence before it can be destroyed;

c. Interview witnesses who may have information about the "dictation from above" scheme, before they can be intimidated or silenced;

d. Seek the appointment of a special master or forensic expert to examine the "Net Ha'Mishpat" system and recover any deleted evidence.

8. Without counsel, the Plaintiff cannot protect this evidence. The Defendants will destroy it, and the truth will be lost forever. The appointment of counsel is not merely a matter of fairness; it is a matter of evidentiary survival.


V. LEGAL STANDARD


1. 28 U.S.C. § 1915(e)(1) provides that a district court "may request an attorney to represent any person unable to afford counsel." The Second Circuit has articulated factors to guide this discretion, including whether the plaintiff's claim "seems likely to be of substance" (a "colorable claim"), the plaintiff's ability to investigate the facts and present the claim, the complexity of the legal issues, the need for expert testimony, and the plaintiff's capacity to retain counsel on his own behalf. Hodge v. Police Officers, 802 F.2d 58, 61-62 (2d Cir. 1986).

2. The "colorable claim" requirement is not a high bar. A plaintiff need only show that his claim is not frivolous and has some chance of success. Cooper v. A. Sargenti Co., 877 F.2d 170, 172-74 (2d Cir. 1989).


VI. ARGUMENT


1. The Plaintiff has more than a colorable claim – he has presented evidence of a transnational racketeering enterprise supported by official U.S. government findings.

2. The Plaintiff cannot investigate or present his claims pro se. He is homeless, without resources, and without access to legal tools. The Defendants have unlimited resources and have already demonstrated their willingness to use violence to obstruct the Plaintiff's efforts. Amir Melamed remains in custody to this day.

3.  This case will require expert testimony on multiple issues: forensic accounting, psychiatric expertise, international law, and forensic data recovery to retrieve deleted evidence. The Plaintiff cannot secure such experts without counsel.

4.  The imbalance of power, imminent danger, and risk of evidence destruction overwhelmingly favor appointment of counsel. The Plaintiff's life is in immediate danger. Every day that passes without counsel is a day that his legal claims are not being pursued, his physical safety is not being protected, and critical evidence is at risk of permanent destruction.

VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court appoint counsel to represent him in this action.

Dated: March 2, 2026

New York, New York

Respectfully submitted,

---

Jacob Israel Bossira

Plaintiff, Pro Se

(Homeless – No Fixed Address)

Telephone: +972 53-373-8331

Email: bossira888@gmail.com

---

[עמוד 46]

PLAINTIFF'S EMERGENCY MOTION FOR SUBSTITUTE SERVICE OF PROCESS
AND PROTECTIVE ORDER

Plaintiff Jacob Israel Bossira, appearing pro se and in a state of extreme and life-
threatening emergency, respectfully moves this Court for an order authorizing
substitute service of process on the Defendants, and in support thereof states as
follows:

MEMORANDUM OF LAW

I. FACTUAL BACKGROUND – THE ONGOING DETENTION OF AMIR MELAMED

1. As referenced in the Complaint, on or about [Date], an individual named Amir
Melamed attempted to lawfully serve legal process on Defendant Judge Idit
Julian. Mr. Melamed was acting as a process server in connection with a
complaint filed against Judge Julian.

2. Within thirty minutes of attempting service at the residence of a police
commander involved in this matter, Mr. Melamed's home was breached by
armed police officers. He was arrested without legal cause, his electronic
devices and legal materials were confiscated, and he remains in custody to this
day. His continued detention serves as chilling, ongoing proof of what happens
to anyone who attempts to hold the Defendants accountable through legal
process.

3. The Plaintiff has been advised by multiple sources that any attempt by him or
anyone acting on his behalf to personally serve process on the Defendants in
Israel would result in immediate arrest, physical harm, and destruction of
evidence. The Amir Melamed incident is not an isolated aberration; it is the
Enterprise's standard operating procedure.

II. LEGAL STANDARD

1. Federal Rule of Civil Procedure 4(f)(3) explicitly authorizes this Court to order
service "by other means not prohibited by international agreement, as the court

orders." This provision grants the Court broad discretion to fashion alternative service methods when personal service is impracticable or dangerous.

2. The Second Circuit has held that Rule 4(f)(3) is "an independent basis for service" and that "district courts have broad discretion to order service under that provision." In re Ski Train Fire in Kaprun, Austria, 2006 WL 1328259 (S.D.N.Y. May 16, 2006). The only limitations are that the method ordered must be "reasonably calculated to give notice" and must not violate international law. See Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

3. Courts have authorized service by email, by mail, and on foreign government officials through diplomatic channels when personal service was impossible or dangerous. See, e.g., Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1016 (9th Cir. 2002); In re GLG Life Tech Corp. Sec. Litig., 287 F.R.D. 262, 267 (S.D.N.Y. 2012).


## III. ARGUMENT


1. Personal Service in Israel Is Impossible and Life-Threatening. The ongoing incarceration of Amir Melamed demonstrates that personal service in Israel is not merely impracticable – it is impossible and life-threatening. The Defendants have made clear that they will use violence and false imprisonment to obstruct any attempt at service. This Court should not require the Plaintiff to risk his life or the lives of others to effect service.

2. Substitute Service Is Authorized and Appropriate. Rule 4(f)(3) exists precisely for situations like this one. The Advisory Committee Notes explain that the provision allows courts to "fashion other means of service" when "service under the applicable convention is impossible or would give rise to undue burden or expense."

3. The Proposed Methods Are Reasonably Calculated to Provide Notice. The Plaintiff proposes the following alternative service methods:

a. Service by certified international mail, return receipt requested, addressed to the Defendants' official government addresses in Israel;

b. Service by email to the Defendants' official government email addresses;

c. Service on the Defendants' U.S.-based financial representatives, including the Development Corporation for Israel (Israel Bonds) at their offices in New York.

4.  These methods are reasonably calculated to provide actual notice to the Defendants. The Defendants are sophisticated entities with established systems for receiving mail and email. They cannot plausibly claim ignorance of lawsuits served through these channels.

5.  This Court Must Protect Its Own Process. If the Defendants are permitted to use violence and intimidation to block service of process, the integrity of this Court's proceedings is fundamentally undermined. No litigant should be required to risk his life simply to notify the opposing party of a lawsuit.

6.  A Protective Order Is Necessary. In addition to authorizing substitute service, the Plaintiff requests a Protective Order prohibiting the Defendants from using police or security forces to harass, arrest, or seize the legal materials of the Plaintiff or anyone acting on his behalf during the pendency of this action.

IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1.  Authorize substitute service of process on the Defendants by certified international mail and email, as proposed;

2.  Order that service by these methods shall be deemed effective upon mailing or sending;

3.  Issue a Protective Order as requested;

4.  Grant such other and further relief as the Court deems just and proper.

Dated: March 2, 2026

New York, New York

Respectfully submitted,

---

Jacob Israel Bossira

Plaintiff, Pro Se

(Homeless – No Fixed Address)

Telephone: +972 53-373-8331

Email: bossira888@gmail.com


---

[עמוד 53]


PLAINTIFF'S EMERGENCY MOTION FOR PREJUDGMENT ATTACHMENT OF ASSETS


Plaintiff Jacob Israel Bossira, appearing pro se and in a state of extreme and life-threatening emergency, respectfully moves this Court for an order attaching and freezing the assets of Defendant Corporate Entity ("The State of Israel") within the jurisdiction of this Court, and in support thereof states as follows:


MEMORANDUM OF LAW


I. INTRODUCTION


1. This motion seeks to prevent the Defendants from continuing to use American investor funds to finance their racketeering activities and to ensure that assets remain available to satisfy any judgment the Plaintiff may obtain. The Defendants have raised hundreds of millions of dollars from American investors through the sale of "Israel Bonds" – funds that are now being used to pay the salaries of the judges, social workers, and officials who perpetrated the kidnapping of the Plaintiff's children, the theft of his technology, and the systematic obstruction of justice documented in the Complaint. This Court should freeze those assets immediately.


II. FACTUAL BACKGROUND

1.  The primary Defendant, the State of Israel, is sued in this action as a corporate entity registered with the U.S. Securities and Exchange Commission (SEC CIK #0000052749). This corporation engages in extensive commercial activity within the Southern District of New York by issuing, marketing, and selling "Israel Bonds" to American investors.

2.  The Development Corporation for Israel has sold billions of dollars in bonds to American investors. The proceeds from these bond sales are used to fund the Israeli government apparatus – including the very judicial and welfare system that has perpetrated the racketeering activities against the Plaintiff.

3.  The Defendants have induced American investment by presenting a false image of a stable, democratic state with an independent judiciary. The offering materials for Israel Bonds contain material misrepresentations and omissions. They fail to disclose that the Israeli legal system is a "Fortress of Lies" engaged in a "Judicial Coup," and that the State faces contingent liabilities in the trillions of dollars.

4.  As documented in publicly available sources, the Israeli financial system is entirely subservient to U.S. authority. Following a U.S. Executive Order imposing sanctions on several Israeli citizens in February 2024, Bank Leumi immediately froze the bank account of Yinnon Levy. The Bank of Israel admitted that circumventing sanctions would expose Israeli banks to disconnection from the global financial system. This demonstrates that the assets the Plaintiff seeks to attach are within the effective control of this Court.

## III. LEGAL STANDARD

1.  The RICO statute authorizes pre-trial restraint of assets to preserve them for potential forfeiture. 18 U.S.C. § 1963(d) provides that upon the filing of a RICO complaint, the Court may enter a restraining order to "preserve the availability of property described in subsection (a) for forfeiture under this section".

2.  Federal Rule of Civil Procedure 64 provides that "at the commencement of and throughout the action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." New York law authorizes prejudgment attachment where the defendant is a foreign corporation or where the defendant has concealed or is about to conceal property. N.Y. C.P.L.R. § 6201.

3. The standard for a prejudgment attachment under New York law requires a showing that (1) there is a cause of action, (2) it is probable that the plaintiff will succeed on the merits, (3) the amount demanded exceeds all counterclaims, and (4) one of the statutory grounds for attachment exists. Bank of China v. NBM LLC, 359 F.3d 171, 175 (2d Cir. 2004).

## IV. ARGUMENT

1. There Is a Strong Likelihood of Success on the Merits. The Complaint is supported by overwhelming evidence, as referenced throughout, including official U.S. government findings, physical proof of judicial forgery, and admissions by senior Israeli officials.

2. The Assets Are at Risk of Dissipation. The Defendants are actively engaged in dissipating assets. They have already demonstrated their willingness to freeze and seize assets when it serves their purposes. There is every reason to believe that, upon notice of this lawsuit, they will take steps to move or conceal their U.S.-based assets.

3. Statutory Grounds for Attachment Exist. The Defendant Corporate Entity is a foreign corporation not qualified to do business in New York. N.Y. C.P.L.R. § 6201(1). Additionally, the Defendants have concealed and are about to conceal property, as demonstrated by the Amir Melamed incident and the pattern of evidence destruction documented in the Complaint.

4. The Amount Demanded Exceeds Any Possible Counterclaim. The Plaintiff seeks treble damages under RICO, punitive damages, and compensation for the loss of revolutionary technology. The potential damages exceed $75,000, and likely exceed hundreds of millions, if not billions, of dollars.

5. The Public Interest Favors Attachment. The Defendants are using American investor funds to finance racketeering activities that include kidnapping, obstruction of justice, and human rights abuses. The public interest strongly favors freezing those funds. They have frozen the Plaintiff's assets for eighteen years. They have used American money to destroy his life. Now, let American justice protect what little remains. Freeze their assets.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue an immediate order attaching and freezing all assets of the Defendant Corporate Entity within this District, including funds related to the issuance and sale of Israel Bonds.

Dated: March 2, 2026

New York, New York

Respectfully submitted,

---

Jacob Israel Bossira

Plaintiff, Pro Se

(Homeless – No Fixed Address)

Telephone: +972 53-373-8331

Email: bossira888@gmail.com

---

[עמוד 60]

PLAINTIFF'S EMERGENCY MOTION FOR ISSUANCE OF FEDERAL ARREST WARRANTS AND REFERRAL FOR CRIMINAL PROSECUTION

Plaintiff Jacob Israel Bossira, appearing pro se and in a state of extreme and life-threatening emergency, respectfully moves this Court for the issuance of federal arrest warrants for certain Defendants and for referral of this matter to the United States Attorney's Office for criminal prosecution, and in support thereof states as follows:

MEMORANDUM OF LAW

I. INTRODUCTION

1. This motion is necessary because the Defendants have committed crimes that directly interfere with this Court's jurisdiction and that shock the conscience: they have used armed police to arrest a process server and destroy evidence; they have kidnapped children and held them as hostages; they have extorted a man's life's work through systematic obstruction. The United States has established a clear precedent for issuing arrest warrants against foreign officials who engage in criminal conduct affecting U.S. interests. If warrants can issue for the President of Venezuela, they can issue for judges who kidnap children and destroy evidence.

II. FACTUAL BACKGROUND

1. The Arrest and Destruction of Evidence (Obstruction of Justice). As referenced in the Complaint, on [Date], an individual named Amir Melamed attempted to lawfully serve legal process on Defendant Judge Idit Julian. Within thirty minutes of attempting service, Mr. Melamed's home was breached by armed police officers. He was arrested without legal cause, his electronic devices and legal materials were confiscated, and he remains in custody to this day. This constitutes a direct obstruction of this Court's jurisdiction.

2. The Kidnapping of the Plaintiff's Children (Kidnapping). As documented in the Complaint, in 2013, Defendant Judge Edna Ben-Levi ordered the removal of the Plaintiff's minor children from their home without a lawful order, without a hearing, and without evidence. She acted in a territory under military administration where she had no subject-matter jurisdiction. The children were held outside the Plaintiff's custody for years – used as leverage to extort his intellectual property. This constitutes kidnapping (18 U.S.C. § 1201) and hostage-taking (18 U.S.C. § 1203). The kidnapping is ongoing.

3. The Extortion of the Plaintiff's Technology (Extortion). As documented throughout the Complaint, the Defendants engaged in a scheme to extort the Plaintiff's intellectual property (the Nexus-12 technology). They used the kidnapping of his children, the destruction of his businesses, and the systematic

obstruction of justice as leverage to force him to abandon his claims and
surrender his assets.

III. LEGAL STANDARD

1. Federal courts possess inherent authority to issue arrest warrants to protect
the integrity of their proceedings and to address ongoing criminal conduct that
directly interferes with the administration of justice. This authority derives from
the courts' equitable powers and from their constitutional role.

2. The All Writs Act, 28 U.S.C. § 1651, authorizes federal courts to "issue all writs
necessary or appropriate in aid of their respective jurisdictions and agreeable to
the usages and principles of law." This includes the power to issue arrest
warrants.

3. The United States has repeatedly demonstrated its willingness to issue arrest
warrants for foreign officials who commit crimes affecting U.S. interests. The
most prominent example is the indictment and arrest warrant issued for Nicolás
Maduro, the de facto President of Venezuela, on charges of narco-terrorism and
drug trafficking. United States v. Maduro, No. 20-cr-00128 (S.D.N.Y. 2020).

4. The Defendants are not entitled to sovereign or judicial immunity for the acts
alleged here. These acts were performed in a "clear absence of all jurisdiction":
Judge Ben-Levi acted in a territory where she had no territorial authority; Judge
Gadish deleted evidence from a closed case, which is not a judicial act; the
police officers who arrested Amir Melamed were acting as a private militia to
obstruct justice. When officials act as "private imposters" without color of lawful
authority, they are subject to personal criminal liability. See Stump v. Sparkman,
435 U.S. 349, 356-57 (1978).

IV. ARGUMENT

1. The Crimes Alleged Directly Affect This Court's Jurisdiction. By violently
preventing service of process and destroying evidence, the Defendants have
made it impossible for the Plaintiff to properly notify them of this action and have
destroyed evidence critical to these proceedings.

2. The Kidnapping and Extortion Are Ongoing Crimes. The Plaintiff's children
remain separated from him to this day. The Defendants continue to demand

impossible fees and to block the Plaintiff's access to justice. Arrest warrants are necessary to stop these ongoing crimes.

3. The Precedent of Maduro Applies. The same rationale applies here. The Defendants' crimes directly affect the United States by interfering with this Court's jurisdiction and by using U.S.-raised funds to finance their racketeering. They are not entitled to immunity.

4. The Public Interest Demands Action. If foreign officials can use police forces to arrest process servers and destroy evidence with impunity, the integrity of every federal court proceeding involving foreign parties is threatened.

## V. REFERRAL FOR CRIMINAL PROSECUTION

1. The conduct alleged in this Complaint – including obstruction of justice, kidnapping, extortion, wire fraud, and money laundering – constitutes multiple felony violations of United States criminal law.

2. The evidence supporting these allegations is substantial and includes official U.S. government findings (Exhibit U), physical proof of judicial forgery, and documented acts of violence to obstruct justice.

3. Pursuant to this Court's inherent authority and in the interests of justice, the Plaintiff respectfully requests that this Court refer the evidence in this case to the United States Attorney's Office for the Southern District of New York for investigation and potential criminal prosecution.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court:

1. Issue federal arrest warrants for Defendants Edna Ben-Levi, Nava Gadish, Mirale Ben-Nunfeld, and any other Defendants identified through discovery as having participated in the crimes alleged;

2. Direct the U.S. Marshal Service to execute such warrants;

3. Order the seizure of all electronic devices and records belonging to these Defendants to preserve evidence;

4. Refer this matter to the U.S. Attorney's Office for criminal prosecution;

5. Grant such other and further relief as the Court deems just and proper.

Dated: March 2, 2026

New York, New York

Respectfully submitted,

---

Jacob Israel Bossira

Plaintiff, Pro Se

(Homeless – No Fixed Address)

Telephone: +972 53-373-8331

Email: bossira888@gmail.com

---

[עמוד 68]

DECLARATION OF JACOB ISRAEL BOSSIRA IN SUPPORT OF EMERGENCY MOTIONS

I, Jacob Israel Bossira, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am the Plaintiff in this action. I am a citizen and resident of Israel, currently homeless, with no income and no access to any bank accounts. I am the father of two children who have been separated from me by the Defendants' actions.

2. I am the sole inventor of the Nexus-12 AI system, a revolutionary technology for clean energy and non-pharmaceutical medical treatment.

3. I have no income from any source. I am homeless and live on the streets. I have no bank accounts – my accounts were frozen and ultimately closed by the Defendants' actions.

4. On October 28, 2025, the Central District Court of Israel formally recognized my indigence and granted me a full waiver of court fees. A true and correct copy of that decision is available and will be provided upon appointment of counsel.

5. Despite that judicial finding, the State Attorney's Office of Israel continues to demand that I provide bank statements as a condition of proceeding with my cases. I have no bank statements to provide, as I have no bank account.

6. I am personally familiar with the incident involving Amir Melamed. On [Date], Mr. Melamed attempted to serve legal documents on Defendant Judge Idit Julian. Within thirty minutes, his home was breached by police officers. He was arrested, his electronic devices and legal materials were confiscated, and he remains in custody to this day. I believe that any attempt by me or anyone acting on my behalf to personally serve process on the Defendants in Israel would result in similar violence, arrest, and destruction of evidence.

7. The Nexus-12 AI system I developed has enormous value. The Defendants' theft of this technology has caused me damages in the hundreds of millions, if not billions, of dollars. The technology was intended for the U.S. market, and its theft directly harms American economic interests.

8. I am aware that the State of Israel raises funds from American investors through the sale of "Israel Bonds." I believe these funds are used to pay the salaries of the judges, social workers, and officials who perpetrated the crimes against me.

9. I personally witnessed the kidnapping of my children. On [Date], my children were removed from their home by social workers acting under the authority of Judge Edna Ben-Levi. No lawful order was ever shown to me, and I now know that no such order existed.

10. I personally witnessed the destruction of evidence in my case. When I attempted to challenge Judge Nava Gadish's vacatur of my judgment, I discovered that she had deleted the valid Return of Service from the court's digital system. I possess a physical printout of that Return of Service, taken before its deletion.

11. I have been threatened with arrest and imprisonment by court officials if I do not comply with their demands – demands I cannot possibly meet. In particular,

Registrar Mirale Ben-Nunfeld threatened me: "Pay, or you'll go to prison!" I was forced to pay 45,000 NIS I did not owe. After the hearing, she deleted the protocol to conceal her crime. I possess a copy of the falsified "clean" protocol and my contemporaneous notes of the event.

12.  I am currently in imminent danger of death. I am homeless, exposed to missile attacks from Iran, Lebanon, Yemen, and Gaza, and have no access to any protected space. I am also exposed to severe weather conditions with no shelter.

13.  I possess evidence that judicial decisions in my case were dictated from above (תכתיבים מגבוה"). This evidence is currently in my possession but is at extreme risk of being destroyed by the Defendants, who have a proven pattern of destroying evidence. I cannot protect this evidence without the assistance of counsel.

14.  I have filed this action in an emergency, without attaching the full evidentiary exhibits, because my life is in immediate danger and I cannot wait. I respectfully request that counsel be appointed to complete the filing, to secure the evidence, and to represent me in these proceedings.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on March 2, 2026.


---

Jacob Israel Bossira

(Homeless – No Fixed Address)

Telephone: +972 53-373-8331

Email: bossira888@gmail.com


---


[עמוד 72]

EXHIBIT LIST – REFERENCED DOCUMENTS


:NOTE REGARDING EXHIBITS


Due to the extreme and life-threatening emergency facing the Plaintiff – including ongoing missile attacks, homelessness, and imminent danger of death – this filing is submitted without the full evidentiary exhibits. The Plaintiff possesses extensive documentary evidence supporting all allegations, as listed below. The Plaintiff respectfully requests that this Court accept this filing in its current form and appoint counsel, who will promptly file all supporting exhibits and certified .translations


Exhibit Description Relevance

Exhibit D Documentation of the Amir Melamed Incident (police reports, witness statements) Proves that personal service in Israel is impossible and life-threatening; supports Motion for Substitute Service

Exhibit H Central District Court of Israel, Case No. At"m 15282-10-25, Decision dated October 28, 2025 Formally recognizes Plaintiff as homeless and indigent; supports IFP Motion

Exhibit K Legal Review and Analysis by Attorney Eshel Segal (October 12, 2020) Independent expert confirmation of systemic failure in Israeli courts

Exhibit L Printed Return of Service (before its deletion by Judge Nava Gadish) Physical proof of judicial forgery and theft

Exhibit U U.S. House Judiciary Committee Report (July 2025) – "Investigation into U.S. Funding of Israeli NGOs and the Judicial Reform Protests" Official U.S. "government confirmation of U.S. funding of the "Judicial Coup

Exhibit V Compilation of public statements by Prime Minister Netanyahu, Minister Levin, Justice Amit, and other officials Admissions by sovereign officials; "proves existence of "Fortress of Lies" and "Governmental Coup

Exhibit X Calcalist article (February 4, 2024) – "Bank Leumi froze the account of an Israeli sanctioned by the U.S." Proves Israeli financial subservience to U.S. authority

Exhibit Y Bank of Israel official statement (February 2024) Official admission that non-compliance with U.S. sanctions would sever Israel from global financial system

Exhibit Z Supreme Court of Israel decision in Mizrahi Tefahot Bank v. Abramovich (April 2024) Proves that Israeli banks must comply with foreign sanctions

Exhibit AA Supreme Court of Israel, Bagatz 7130/02, Decision dated August 19, 2002 (unsigned "draft judgment") Physical proof of systemic forgery by the highest court

Exhibit CC Excerpts from Israel's periodic reports to the UN Human Rights Committee under the ICCPR Proves false reporting to the international community

Exhibit DD Documentation of the State Attorney's Office demand for bank statements Proves "Catch-22" designed to block access to justice

Exhibit EE Copies of complaints filed with the Municipalities of Kiryat Ata and Kfar Saba Proves municipal knowledge and willful blindness

Exhibit FF Records demonstrating Municipalities' participation in fraudulent proceedings Proves municipalities' active role in the Enterprise

Exhibit GG Halakhic sources regarding disqualification of women from serving as judges Supports Halakhic Fraud claim

Exhibit HH Documentation of communications with named Legal Aid attorneys (2008-2024) Proves sixteen years of systematic obstruction; tolls statute of limitations

Exhibit II Decisions of Justice Daphne Barak-Erez in Case 17/17, including the "Ay Nakat" statement and subsequent sanctions Proves Supreme Court cover-up and retaliation

Exhibit JJ Documentation of the extension of the removal order by Judge Edna Ben-Levi following the Supreme Court's return of the case Proves ongoing lawlessness enabled by Supreme Court

Exhibit KK Documentation of partial fee waivers and contradictory rulings in the National Insurance Institute cases (Judges Mazuz, Tšerniak, Yakubovitz) Proves pattern of economic warfare

Exhibit LL FINRA Interpretive Letter to Development Corporation for Israel (August 4, 2000), denying exemptions from disclosure requirements Proves regulatory requirement for full disclosure, now violated

Exhibit MM Documentation of the Ben-Nunfeld Extortion (copy of falsified "clean" protocol, Plaintiff's contemporaneous notes, complaint filed against the registrar, and any response received) Proves extortion under color of official right, obstruction of justice (deletion of protocol), and ongoing economic harm.

CERTIFICATION: The Plaintiff attests that the documents listed above exist and are in his possession or publicly available. Certified translations and copies will be provided as soon as counsel is appointed or as the Court may direct.

---

[עמוד 75]

CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2026, a true and correct copy of the foregoing Emergency Motions, Complaint, Declaration, and Exhibit List was served upon the Defendants by First Class Mail, postage prepaid, addressed to their last known addresses as follows:

The State of Israel (Corporate Entity)

Development Corporation for Israel

575 Lexington Ave.

New York, NY 10022

Ministry of Justice of Israel

29 Salah a-Din St.

Jerusalem, Israel

Supreme Court of Israel

6 Rabbi Yitzhak HaNasi St.

Jerusalem, Israel

U.S. Department of State

C St. NW 2201

Washington, DC 20520

USAID

Pennsylvania Ave. NW 1300

Washington, DC 20004

American Psychiatric Association

Maine Ave. SW, Suite 900 800

Washington, DC 20024

Rockefeller Philanthropy Advisors

W 48th St., 10th Floor 6

New York, NY 10036

PEF Israel Endowment Funds

Madison Ave., Suite 607 317

New York, NY 10017

Jewish Communal Fund (JCF)

Madison Ave., Suite 703 575

New York, NY 10022

Additional Defendants

c/o Ministry of Justice of Israel

.Salah a-Din St 29

Jerusalem, Israel

I further certify that, pursuant to the Court's order, service on additional
.Defendants may be effected by email or other means as directed

.Executed on March 2, 2026

---

Jacob Israel Bossira

(Homeless – No Fixed Address)

Telephone: +972 53-373-8331

Email: bossira888@gmail.com